## RENCH vs. BELTZHOOVER.

1814.

Rench
vs
Beltzhoover

DECEMBER.

APPEAL from a judgment rendered in *Washington* Coun-
ty Court, in favour of the plaintiff, (now appellee,) in an
action of trespass *quare clausum fregit.* The close was
called *Contention.* The general issue was pleaded, and
plots were made.

Parol evidence
is admissible to
prove that a tract
of land has acquir-
ed a name by re-
putation, different
from its patent
name, and a re-
ference to it by
its acquired
name in a subse-
quent grant. by
way of call, is a
good and legal re-
ference.

It is the pro-
vince of the court
to determine on
the true construc-
tion and operation
of grants, and
whether a call in a
grant is to be gra-
tified or not, and in
what manner, and
of the jury to find
facts, and ascer-
tain the true place
called for in a
grant, according
to the evidence.

1. At the trial the plaintiff offered in evidence the
patent for a tract of land called *Long Meadow En-
larged,* granted to *Daniel Dulany* the 5th of No-
vember 1751, reciting that *Thomas Cresap* had, on the 16th
of June 1739, granted him a tract of land called *Long
Meadows,* containing 550 acres; and had, on the 30th of
June 1742, granted him another tract of land called *The
Addition to Long Meadow,* for 110 acres; and had, on the
8th of August 1743, granted him another tract called *The
West Addition to Long Meadow,* containing 100 acres,
&c. That the said tracts were resurveyed by the said
*Dulany,* and a certificate thereof returned, dated the 1st
of August 1746, reducing the whole into one tract called
*Long Meadow Enlarged,* beginning at the original begin-
ning tree of *Long Meadow*, and running 69 courses viz.
S 12° W 62 perches, then W 584 *perches,* then N 10° W
106 ps. N 46° W 104 ps. N 70° W 64 ps. &c. containing
2131 acres of land. He also read in evidence the patent
for *The Resurvey on Dawson's Strife.* granted to *Peter
Rench* the 17th of June 1757, stating that the said *Rench*
was seized in fee simple of a tract of land called *Strife,*
originally, on the 7th of August 1739, granted to one *Ed-
ward Dawson* for 150 acres, &c. That the said tract was

resurveyed by the said *Rench*, and a certificate thereof returned dated the 6th of October 1752, and the tract called *The Resurvey on Dawson's Strife*, beginning at the original beginning tree, and running 101 courses; the 21st course whereof is as follows, viz. *then N 72° W 170 perches to the end of 226 perches on the second line of a tract of land* called *Long Meadow*, and *running with said land W 358 perches*, N 10° W 106 ps. N 46° W 140 ps. N &c. containing 2345 acres of land. He also offered in evidence the patent of a tract of land called *Contention*, granted to *George Beltzhoover* on the 11th of October 1805, surveyed under a special warrant on the 9th of May 1804, beginning at the end of the 2d line of *Long Meadow Enlarged*, granted to *D. Dulany*, and running with said line E 375½ ps. to the 45th or S 64° E 162 ps. line of *Long Meadow Enlarged*, granted to *Henry Boquet*, and with said line S 64 E 4 ps. to the fourth line of *Continuation of Friendship*, and with said line reversed, W 8 ps. to the end of the 3d line of said land, and reversing said line S 59½° E 147 ps. S 70° W 4½ ps. to the end of the N 50 ps. line of *The Resurvey on Dawson's Strife*, N 72° W 170 ps. W 330 ps. thence by a straight line to the beginning, containing 81 acres. Also the patent of a tract of land called *Long Meadow*, granted to *Thomas Cresap* on the 16th of June 1789, beginning at a bounded red oak standing on the west side of *Neal's Meadow*, below the mouth of a drain that comes out of a great pond being in the said land, and running thence N 75° W 200 perches, then *N 21° W 140 perches*, then, &c. containing 550 acres of land. Also the patent of a tract of land called *Continuation of Friendship*, surveyed on the 3d of July 1770, and granted to *Samuel Hughes* on the 2d of January 1771, beginning at the end of 10 ps. in the 15th line of *The Resurvey on Dawson's Strife* granted to *Peter Rench* the 17th June 1757, and running thence N 72° W 104 perches, S 70° W 82 ps. N 59¼ W 147 ps. E 35 perches, S 64° E 108 ps. N 70° E 82 ps. S 72° E 106 ps. then with a straight line to the beginning, containing 51 acres of land. Also the patent of a tract called *Downey's Lot*, surveyed on the 1st of October 1742, and granted to *Robert Downey* on the 13th of July 1743, beginning at a bounded walnut standing in a glade about a quarter of a mile from the said *Downey's* house, and running thence S. 66° W. 60 ps. then N. 70° W. 20 ps. then

N. 26° E. 100 ps. then N. 50 ps. then N. 70° E. 82 ps. then by a straight line to the beginning, containing 50 acres. He then proved the trespass complained of; and gave in evidence the plots, explanations, and his locations, and proved that such locations were true. The defendant then offered in evidence the patent before mentioned of *Long Meadow*, granted to *Thomas Cresap* the 16th of June 1739. Also the patent of *Long Meadow Enlarged*, granted to *Henry Boquet* the 16th of September 1763, reciting that he was seized by purchase of and in a tract or parcel of land called *Long Meadow*, lying, &c. originally on the 5th of November 1751 granted unto *D. Dulany* for 2131 acres. That on the 9th of June 1752, *Dulany* obtained a special warrant to resurvey the said tract, with liberty to include any contiguous vacancy. In pursuance of which a resurvey was made, and the certificate thereof returned into the land office, by which it appeared there was the quantity of 2370 acres of vacant land added, which certificate of resurvey the said *Boquet* purchased. That the lines of the resurvey interfering with other lands, caveats had been entered by different persons against patent issuing thereon; that *Boquet* being willing and desirous to settle and adjust the said disputes, prayed a special warrant to resurvey the aforesaid tract of land called *Long Meadow*, with liberty to correct, &c. warrant accordingly issued 16th April 1763, and certificate of survey dated the 7th of May 1763 returned, called *Long Meadow Enlarged*. Beginning, for the outlines of the resurvey of the whole, at the beginning tree of a tract of land called *Downey's Contrivance*, taken up by *William Downey*, and which said beginning tree does stand N. 82° E. 26 ps. from the end of the 55th line of the original of this present resurvey, and running thence N. 88½° W. 361 ps. S. 15° W 46 ps. &c. containing 4163 acres of land. Also the patent of *Long Meadow Enlarged*, granted to *Daniel Dulany* on the 5th of November 1751, as before mentioned. Also the patent for *The Resurvey on Dawson's Strife*, granted to *Peter Rench* on the 17th of June 1757, and also before mentioned. The defendant then offered parol testimony to prove that the tract called *Long Meadow Enlarged* was known in the country before the original survey of *The Resurvey on Dawson's Strife*. and was also called in the proceedings in the land office by the name of *Long Meadow*, and

1814.

Rench
vs
Beltzhoover

had acquired that name by reputation before the said original survey of *The Resurvey on Dawson's Strife.* The plaintiff objected to this evidence on the ground, that it tended to vary or contradict the call in the 21st line of *The Resurvey on Dawson's Strife,* and prayed the opinion of the court, and their direction to the jury, that there was no ambiguity on the face of the certificate and grant in the call of the 21st line of *The Resurvey on Dawson's Strife* to *Long Meddow;* and that no parol or other proof could be admitted to vary or contradict the grant as to that call, and that the jury were bound to go to the point called for, if it was possible to do so, and if impossible to gratify that call, that then the same must be rejected, and the course and distance adhered to with or without correcting variation. The Court [*Shriver,* A. J.] sustained the objection, and gave the direction to the jury as prayed. The defendant excepted, &c.

2. The defendant then prayed the opinion of the court, that if the jury were of opinion from the evidence that *Long Meadow Enlarged,* located on the plots, was generally known in the neighbourhood by the name of *Long Meadow,* at the time *The Resurvey on Dawson's Strife* was taken up, and had also been referred to by said name in proceedings of the land office, and in other patents, and particularly in the patent of *Long Meadow Enlarged* granted *Henry Boquet,* and that the call in *The Resurvey on Dawson's Strife,* to the second line of *Long Meadow,* was meant and intended to be the second line of *Long Meadow Enlarged,* that then the jury might so find, and regulate their verdict accordingly. But the court refused to give this opinion prayed by the defendant, because no ambiguity appearing on the face of the grant of *The Resurvey on Dawson's Strife,* no evifence *de hors* the grant could be admitted to control or vary the call expressed in its 21st line; but were of opinion, and so directed the jury, that if the jury found there was no such point as was called for in that line, then said line must be run the course and distance expressed in the grant, with or without variation. The defendant excepted.

3. The defendant then prayed the court to direct the jury, that it was a matter proper to be decided by the jury, whether the call in *The Resurvey on Dawson's Strife,* to the end of 226 perches on the second line of *Long Meadow,* and running with the said land, was a call possible

to be gratified or not.   The court refused to give the direction; but were of opinion, and instructed the jury, that if they found there were not 226 perches in the second line of *Long Meadow* called for in the grant of *The Resurvey on Dawson's Strife*, that in law the call could not be gratified, and they must run course and distance as to that line, with or without variation.   The defendant excepted.

4. The defendant then prayed the court to direct the jury, that the call in the 21st line of *The Resurvey on Dawson's Strife*, to the end of 226 perches on the second line of *Long Meadow*, and with said tract, was a call to *Long Meadow*, although there were only 140 perches, not 226 perches, in the second line of *Long Meadow*, and that the jury might locate *The Resurvey on Dawson's Strife* so as to run the twenty-second line of said land with *Long Meadow*  But the court refused to give this direction, being of opinion that the 22d line was a dependent location of the 21st, and must commence where the 21st ended; and that if the call in the 21st line could not, under the opinion of the court already given, be gratified, that then the 22d must commence and run from where the jury should find the 21st ended, according to the course and distance, with or without variation.   The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before CHASE, Ch. J. and NICHOLSON, EARLE, and JOHNSON, J. by

. *Martin*, for the Appellant; and by
*Key*, for the Appellee.

They referred to *Smith's Lessee vs. Volgamot & White*, 2 *Harr. & M·Hen.* 155.  *Webb's Lessee vs. Beard*, 1 *Harr. & Johns.* 349; and *Carroll et al. Lessee vs. Norwood*, in this court, at December term 1812 *(a)*.

CHASE, Ch. J. delivered the opinion of the court.   On the *first* bill of exceptions.   The court are of opinion, that the learned judge below erred in refusing to admit parol evidence to go to the jury, to prove that the tract of land called *Long Meadow Enlarged*, granted to *Daniel Dulany* on the 5th of November 1751, was known, and had ac-

*(a)* See 5 *Harr. & Johns.* 163.

1814.

Dorsey
vs
Courtenay

quired the name, by reputation, of *Long Meadow*. The court being of opinion, that *Long Meadow Enlarged* was capable of acquiring the name of *Long Meadow* by reputation, and the reference to it by way of call was a good and legal reference; and if the jury found that *Long Meadow Enlarged* was known, and had acquired by reputation the name of *Long Meadow*, they were bound, in locating *The Resurvey on Dawson's Strife*, to run the 21st course of that tract, to wit, N 72° W. 170 ps. to the termination of 226 perches on the second line of *Long Meadow Enlarged*, and the subsequent courses specified in *The Resurvey on Dawson's Strife*, accordingly.

The court dissent from the opinions expressed by the court below in the *first* and *second* bills of exceptions.

On the *third* bill of exceptions. The court are of opinion, that it exclusively belongs to the power and jurisdiction of the court to determine on the true construction and operation of grants, and whether a call in a certificate of survey is to be gratified or not, and in what manner; and that it exclusively appertains to the province of the jury to find facts, and ascertain the true place or point called for, according to evidence legally admissible by the court.

The court concur with the court below in refusing to give the directions prayed in the *third* and *fourth* bills of exceptions.

JUDGMENT REVERSED.